UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TORREY NELSON, | CASE NO. 17-6018 RJB |
| Plaintiff, | ORDER ON MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| COWLITZ COUNTY, MARK NELSON, in his official capacity as Sheriff of Cowlitz County, DANIEL O'NEILL, individually and as an employee of Cowlitz County, | |
| Defendants. | |

This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. 15) and the Plaintiff's Motion for Summary Judgment (Dkt. 18). The Court has considered the pleadings filed in support of and in opposition to the motions, audio and video disks submitted, and the remaining file herein. Oral argument has been requested, but is unnecessary to decide the motions.

This case arises from Defendant Deputy O'Neill's arrest of Plaintiff Torrey Nelson, a forty-five year old African American man, for driving under the influence of alcohol on December 12, 2016. Dkt. 1. After the criminal charges were dismissed, the Plaintiff filed this

case, pursuant to 42 U.S.C. § 1983, asserting that Deputy O'Neill and the other Defendants violated his First, Fourth, and Fourteenth Amendment rights and committed various state torts.

The Defendants now move for summary judgment dismissal of the case. Dkt. 15. The Plaintiff moves for summary judgment on his Fourth Amendment claim – that he was impermissibly seized without probable cause when he was arrested. Dkt. 18. For the reasons provided below, the Defendants' motion (Dkt. 15) should be granted, in part, and denied, in part, and the Plaintiff's motion (Dkt. 18) should be denied.

## I.  RELEVANT FACTS AND PROCEDURAL HISTORY

### A.  BACKGROUND FACTS

Early in the morning on December 11, 2016, Deputy O'Neill, who has been an officer for 46 years, was operating moving radar, which he confirmed was calibrated correctly, while on patrol on Ocean Beach Highway in Cowlitz County, Washington. Dkts. 17, at 1, and 19-2, at 7. He passed the Plaintiff at 1:55 a.m. Dkt. 17, at 1. Deputy O'Neill recorded the Plaintiff going 57 m.p.h. in a 35 m.p.h. zone. *Id*. Deputy O'Neill activated his lights and turned around to follow the Plaintiff. *Id*. There was no other traffic and there were side roads. Dkt. 19-2, at 36. According to Deputy O'Neill, the Plaintiff slowed to around 40 m.p.h., but continued to drive for about a mile without stopping (including waiting at a traffic light). Dkts. 17, at 2 and 19-1, at 3. Deputy O'Neill could see that there were a "bunch of guys in the car." Dkt. 19-2, at 37.

According to the Plaintiff, he was visiting the area and had been with friends at a bar for four hours before he was stopped by Deputy O'Neill. Dkt. 16, at 6. He was unfamiliar with Ocean Beach Highway and did not know, or notice, what the speed limit was along that particular part of the roadway. *Id*. The Plaintiff states that the road was a four lane road with two lanes going

each direction. *Id.*, at 10. He maintains that he drove only three or four blocks before he found somewhere that he felt it was safe to pull over. Dkts. 16, at 10, and 26, at 2.

The Plaintiff pulled into a parking lot at a Chevron station at 15th and Ocean Beach Highway. Dkts. 17, at 2 and 19-2, at 27. According to Deputy O'Neill, the Plaintiff pulled his car across the lot to a darker spot and into angle style parking, rather than stop in front of the gas station. Dkt. 19-3, at 26. At that point, Deputy O'Neill, who was alone, called for "cover" assistance on his radio. Dkt. 19-2, at 38. He was concerned because there were three men in the Plaintiff's car and, from Deputy O'Neill's perspective, they failed to stop for almost a mile despite passing several side streets off of Ocean Beach Highway. Dkt. 19-2, at 38.

Deputy Mark Johnson and Sergeant Dave Handy, both of the Cowlitz County Sheriff's Office, responded to Deputy O'Neill's request for cover, each in separate vehicles. Dkt. 25-1, at 13-16. According to Deputy Johnson, Deputy O'Neill stated in his request that he needed cover because the car he was attempting to stop would not comply. *Id.* Two other police agencies responded as well. Dkt. 25-1, at 16. As to why so many responded, Deputy Johnson explained,

> Deputy O'Neill is not one that calls for cover. And when he does call for cover, there's a good reason for it. We've actually encouraged him to call for cover more. He's old school. He's used to working alone, and he did that as a trooper. And when he does call for cover, we're a small community and guys know if Deputy O'Neill is calling for cover, there's a reason. And people go to cover him.

Dkt. 25-1, at 18.

Deputy O'Neill contacted the Plaintiff through the driver's side window before the other officers arrived. Dkt. 17, at 2. It was at this point that Deputy O'Neill first realized that the Plaintiff was African American. Dkt. 19-2, at 40. According to Deputy O'Neill, the Plaintiff acknowledged that he did not know how fast he was going or the posted speed limit. Dkts. 19-1, at 3 and 19-2, at 41. Deputy O'Neill asked if he had been drinking and the Plaintiff initially

1    denied it. Dkts. 19-1, at 3 and 19-2, at 42. (The Plaintiff now acknowledges that he had two

2    beers while at the bar. Dkt. 16, at 7.) The Plaintiff told Deputy O'Neil that the other two

3    passengers were intoxicated. Dkt. 17, at 2. Deputy O'Neill told the Plaintiff that he could smell

4    that he had been drinking. Dkt. 19-2, at 43.

5         Deputy O'Neill asked the Plaintiff to step out of the car because of the strong smell of

6    alcohol coming from inside the car. Dkt. 17, at 2. The Plaintiff, who then was cooperating with

7    Deputy O'Neill, got out of his car. Dkt. 19-2, at 43. Deputy O'Neill states that, at that point, he

8    did not believe that he had probable cause to arrest the Plaintiff for DUI. Dkt. 19-2, at 43.

9         Once outside the vehicle, Deputy O'Neill asked the Plaintiff to blow in his face in order to

10   determine if the odor of alcohol was coming from the Plaintiff and not just the other occupants of

11   the car. Dkt. 17, at 2. The Plaintiff began to blow, but then blew his breath to the side. *Id.*

12   Deputy O'Neill could still smell alcohol on the Plaintiff's breath. Dkts. 17, at 2 and 19-2, at 46.

13   Deputy O'Neill again asked whether the Plaintiff had been drinking. Dkt. 17, at 2. This time,

14   the Plaintiff stated that he had a couple drinks the day before, but denied it was from that night.

15   *Id.* Deputy O'Neill felt that was inconsistent with the odor he was smelling. *Id.*

16        Around this point, Deputy Johnson pulled up - Deputy O'Neill was already speaking to the

17   Plaintiff outside the Plaintiff's car. Dkt. 25-1, at 14.

18        Deputy O'Neill noticed that the Plaintiff's eyes were bloodshot and watery. Dkt. 17, at 2.

19   Deputy O'Neill asked the Plaintiff to take a voluntary preliminary breathalyzer. *Id.* Deputy

20   O'Neill assured the Plaintiff it was voluntary. Dkt. 19-2, at 57. According to Deputies O'Neill

21   and Johnson, the Plaintiff agreed. Dkts. 17, at 2; 25-1, at 21; and 19-2, at 46. Deputy O'Neill

22   states that he did not yet think he had probable cause to arrest the Plaintiff for DUI without

23   further investigation. Dkt. 19-3, at 64.

24

Deputy Johnson was behind the Plaintiff and could smell alcohol coming from the Plaintiff. Dkt. 25-1, at 21 and 24. The other officers were roughly eight to ten feet away from Deputy O'Neill and the Plaintiff. Dkt. 19-2, at 44. The two car passengers started making comments, and, according to Deputy Johnson, they began "inflame[e] the situation." Dkt. 25-1, at 23.

According to Deputy O'Neill, the Plaintiff's demeanor then changed - he became argumentative, declining to take the breath test that he had just agreed to take. Dkts. 17, at 2 and 19-2, at 47. The Plaintiff says he remained calm, did not raise his voice, and denies using profanity. Dkt. 16, at 13. Deputy O'Neill's perception was different; he states that the Plaintiff became "a more in-your-face kind of person." Dkt. 19-2, at 47. According to Deputy O'Neill, the Plaintiff belligerently accused Deputy O'Neill of lying about how fast he was going, asserting that "it wasn't him," and that Deputy O'Neill was trying to force him to take the breath test. Dkt. 19-2, at 48. Deputy O'Neill states that the Plaintiff repeatedly accused him of being prejudiced against him based on race. Dkt. 19-2, at 51. Deputy O'Neill offered to conduct voluntary field sobriety tests to prove that the Plaintiff was not intoxicated, but the Plaintiff refused. Dkt. 19-2, at 58. Deputy O'Neill states that "instead of a passive person that I was just talking to about speeding, he got in my face, and I'm thinking well, this is more consistent with somebody who's had too much to drink." Dkt. 19-2, at 48. Deputy O'Neill did not feel that the Plaintiff was trying to explain why he was suddenly refusing to take the tests, but was accusing the officers of lying and of racism. Dkt. 19-2, at 59. Deputy O'Neill acknowledges that the Plaintiff did not do anything that was physically threatening or aggressive. Dkt. 19-2, at 50, 63-65.

At that point, Deputy O'Neill placed the Plaintiff under arrest for drinking and driving. Dkt. 17, at 2. Deputy O'Neill pointed to the Plaintiff's speeding, his inability to tell Deputy O'Neill

how fast he was going or the posted speed limit, the Plaintiff's failure to stop for almost a mile, the smell of alcohol on the Plaintiff's breath, the Plaintiff's watery, red eyes, his initial lying and then acknowledgement that he had been drinking, and then, his sudden change in mood and demeanor as the basis for the determination that he had probable cause to arrest the Plaintiff for DUI. Dkts. 17, at 2 and 19-2, at 11. Deputy O'Neill concedes that the Plaintiff's coordination was "fair." Dkt. 19-2, at 77.

Deputy O'Neill now acknowledges that, from the Plaintiff's perspective, this may have been a scary situation after hearing about several police involved shootings in the news. Dkt. 19-2, at 69-70. The Plaintiff is black man, who was pulled over for speeding in rural Washington in the middle of the night; after the initial stop began, around four or five police cars arrived. *Id.*

In any event, the Plaintiff stiffened up when the officers put handcuffs on him, but otherwise did not act physically aggressively. Dkt. 19-2, at 66. After the Plaintiff was handcuffed, Deputy O'Neill and another officer escorted the Plaintiff to the patrol car. Dkt. 16, at 11. According to the Plaintiff, Deputy O'Neill had the Plaintiff by his arm and the other officer (possibly) patted the Plaintiff down. Dkt. 16, at 11. The Plaintiff states that Deputy O'Neill "got a little aggressive when he was trying to get [the Plaintiff] into the car." Dkt. 16, at 11. As to this, the Plaintiff testified as follows:

> I had a - it was a struggle for me, for one. I had handcuffs on. For two, I couldn't, you know - it's been over - I mean, how - I was 19. It's been over - you know, close to 30 years before I was - had, you know, been in the back of a car with handcuffs on and it's not something I'm used to doing so it might have taken me a second to adjust - I got long legs, to get into a police car in that situation. And I think that kind of irritated him that I was, you know, kind of struggling. And so I think I was - you know, I wasn't slammed in the car or nothing like that, but it was, you know, kind of like get in the car because we're in a hurry sort of thing, you know.

Dkt. 16, at 11. In addition to feeling like he was being rushed to get in the car, the Plaintiff states that he probably bumped his leg as he swung it into the car; he indicates that he did not suffer any physical injuries, however. Dkt. 16, at 11-12. Deputy O'Neill states that Plaintiff would not pull his legs into the car until after some time passed. Dkt. 19-3, at 27.

Deputy O'Neill transported the Plaintiff to the jail for processing and booking. Dkt. 17, at 2. Deputy Johnson impounded the Plaintiff's car and gun, which was in the driver's side door pocket. Dkt. 25-2, at 28-29. Deputy O'Neill did not search the Plaintiff's vehicle. Dkt. 17, at 2.

At the police station, the Plaintiff took a preliminary breath test, the result of which was a .09 (the legal limit for driving in Washington is .08). Dkt. 19-1, at 3. Deputy O'Neill felt that the Plaintiff was difficult to work with at the station, but the Plaintiff submitted to other tests which Deputy O'Neill felt were consistent with intoxication. Dkt. 19-1, at 3.

The Plaintiff was charged with driving under the influence of intoxicating liquor contrary to RCW 46.61.502. Dkt. 19-3. On March 28, 2017, the Plaintiff moved to dismiss the criminal charges against him, arguing that his arrest was made without probable cause and so all evidence obtained after his arrest should be suppressed. Dkt. 19-3. The State of Washington, through the Cowlitz County Prosecuting Attorney's office responded and opposed the motion. Dkt. 19-4, at 2-9. A hearing was held in Cowlitz County District Court, where Deputy O'Neill testified (Dkt. 19-5) and on April 20, 2017, the court granted the motion to dismiss (Dkt. 19-6). That one page order provided, in part, "[b]ased on the record, the court file to date, the testimony of Deputy O'Neill, and the argument of counsel for both parties, this Court finds that there was not probable cause to arrest Mr. Torry Nelson." Dkt. 19-6, at 2. The Washington Department of Licensing dismissed the action to suspend or revoke the Plaintiff's driver's license. Dkt. 19-7.

The Plaintiff submitted a public records request for copies of all the dash camera videos of his arrest. Dkt. 19-8. He was provided three recordings, but a recording from Deputy O'Neill's car was not included. Dkt. 19-9. (Ordinarily, the dash cameras in the Cowlitz County Sheriff's Office's patrol cars switch on whenever the officers either activate their lights or hit a switch inside the car. Dkt. 25-1, at 11-12. When they pulled the vehicles near their office, the videos would download wirelessly and a recording can be made from the downloaded record. Dkt. 25-1, at 10-11.) Deputy O'Neill's dash camera was not working the night that the Plaintiff was arrested. Dkt. 19-2, at 16. He testified that he had an older car and the dash camera video stopped working a few months before this incident. Dkt. 19-2, at 16. He verbally reported that it was not working to his supervisor. Dkt. 19-2, at 16-17. Deputy O'Neill testified that he "knew that the undersheriff was aware that [his] video system was down. [He didn't] know what steps [the undersheriff] took to have it corrected or to what extent he had IT go look at it or [their] personnel." Dkt. 19-2, at 20. Deputy O'Neill did not request surveillance camera footage from any of the nearby businesses of this event. Dkt. 19-2, at 29-30.

## B. PROCEDURAL HISTORY AND PENDING MOTIONS

On December 8, 2017, the Plaintiff filed this case. Dkt. 1. The Plaintiff asserts federal constitutional claims, pursuant to 42 U.S.C. § 1983, for violation of his: (1) Fourth Amendment rights based on his arrest without probable cause, (2) Fourteenth Amendment right based on his arrest due to his race, (3) First Amendment right because his arrest was in retaliation for his protected speech, (4) Fourth and Fourteenth Amendment rights against excessive force, (5) Fourth and Fourteenth Amendment rights related to the "unlawful search and seizure" of Plaintiff's vehicle, (6) Fourteenth Amendment right against wrongful prosecution, (7) Fourteenth Amendment right for "failure to preserve and disclose exculpatory evidence," (8) Fourteenth

Amendment right "malicious abuse of process," and (9) "*Monell* claim." Dkt. 1. The Plaintiff also makes state law claims for: (10) negligence, (11) outrage, and (12) false arrest and false imprisonment. *Id.*

The Defendants now move for summary judgment arguing that the claim against Sheriff Nelson in his official capacity should be dismissed because it is duplicative of the suit against Cowlitz County. Dkts. 15 and 30. They move for dismissal of the Plaintiff's claims against Cowlitz County, arguing that the Plaintiff has no evidence to support a claim under *Monell v. N.Y. City Dept. of Soc. Svcs.,* 436 U.S. 658 (1978). *Id.* The Defendants then argue that the Deputy O'Neill is entitled to qualified immunity on the Plaintiff's (1) Fourth Amendment claim that he was arrested without probable cause, (2) Fourteenth Amendment claim for improper arrest due to race, (3) First Amendment claim for arrest in retaliation for protected speech, (4) Fourth Amendment claim for excessive force, (5) Fourth and Fourteenth Amendment claims for unlawful search and seizure of a vehicle, (6) Fourteenth Amendment claims based on wrongful prosecution, failure to preserve and disclose exculpatory evidence and malicious abuse of process. *Id.* The Defendants also move for dismissal of the Plaintiff's state law torts of negligence (which Defendants assert fail under the public duty doctrine), outrage (for which they maintain Plaintiff has no evidence to support), and false arrest and false imprisonment. *Id.*

The Plaintiff opposes the motion, and argues that the claims against Sheriff Nelson should not be dismissed because he asserts that Sheriff Nelson ratified Deputy O'Neill's decision to arrest the Plaintiff. Dkt. 24. The Plaintiff opposes the motion for summary judgment of his Fourth Amendment claim that he was arrested without probable cause (Dkt. 24) and cross moves for summary judgment on this claim alone (Dkts. 18 and 24) by arguing that collateral estoppel

applies, his Fourth Amendment rights were violated, and that Deputy O'Neill is not entitled to qualified immunity.

The Plaintiff also opposes Defendants' motion for summary judgment on his federal claims for violation of his First Amendment rights based on arrest in retaliation for protected speech, Fourth Amendment rights against excessive force, and Fourteenth Amendment rights regarding the failure to collect, preserve or disclose potentially exculpatory evidence and for malicious prosecution. Dkt. 24. The Plaintiff opposes the Defendants' motion for summary judgment on his state law claims for outrage, false arrest, and false imprisonment. *Id*.

## C. ORGANIZATION OF OPINION

This opinion will first provide the summary judgment standard, then the law on § 1983 cases generally, and then address the Defendants' motion for summary judgment regarding the claims asserted against Sheriff Mark Nelson and Cowlitz County. This opinion will then discuss the cross motions for summary judgment on the Plaintiff's Fourth Amendment claim for arrest without probable cause, and proceed to address the Defendant's motion for summary judgment on the remainder of the Plaintiff's claims, by claim.

## II. <u>DISCUSSION</u>

## A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue

of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**B. SECTION 1983 GENERALLY**

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*,

*Daniels v. Williams*, 474 U.S. 327 (1986).  Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present.  *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

Defendants in a Section 1983 action are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity balances two important interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Harlow v. Fitzgerald*, 457 U.S. at 815. The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular official. *Id*. at 819. Whether a reasonable officer could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in the litigation. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872-73 (9th Cir. 1993).

In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case.  *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001).  This Court has discretion to consider the second *Saucier* factor first, "whether the right was clearly established." *Pearson,* at 236.

"The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he

confronted." *Id.* The plaintiff bears the burden of proving that the particular federal right alleged to have been violated was clearly established at the time. *Pearson v. Callahan,* 555 U.S. 223 (2009).

## C. CLAIMS ASSERTED AGAINST SHERIFF NELSON IN HIS OFFICIAL CAPACITY AND COWLITZ COUNTY

A county or municipality is responsible for a constitutional violation only when an action taken pursuant to a county or municipal policy of some nature caused the violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A claim against a county official in their official capacity is "no different" than a claim against the county. *See Will v. Dept. of State Police,* 491 U.S. 58, 71 (1989).

In order to make claim for §1983 liability against Sheriff Nelson, in his official capacity, (and therefore Cowlitz County), the Plaintiff must show that: (1) he was deprived of a constitutional right; (2) the County had a policy; (3) the policy amounted to a deliberate indifference to his constitutional rights; and (4) the policy was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001)(*internal quotations omitted*).

> There are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005)(*internal quotation marks and citations omitted*).

The Plaintiff opposes the motion to dismiss the claims against Sheriff Nelson in his official capacity. The Plaintiff argues that Sheriff Nelson ratified Deputy O'Neill's decision to arrest the Plaintiff because Sheriff Nelson failed to investigate the matter, failed to take any action against Officer O'Neill, and failed to provide any training. Dkt. 24.

The "ratification test is satisfied if a plaintiff can prove that an official with final policy-making authority ratified a subordinate's decision or action and the basis for it." *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996) (*internal citations omitted*). "Ratification requires, among other things, knowledge of the alleged constitutional violation." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). Moreover, "[a] policymaker's knowledge of an unconstitutional act does not, by itself, constitute ratification." *Id.* "Instead, a plaintiff must prove that the policymaker approved of the subordinate's act. For example, it is well-settled that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval." *Id.*

The Plaintiff's claims against Sheriff Nelson, in his official capacity, should be dismissed. The Plaintiff has pointed to no evidence that Sheriff Nelson knew of the alleged constitutional violation. Further, the Plaintiff has failed to point to any evidence that Sheriff Nelson expressly "approved of" Deputy O'Neill's actions. Accordingly, the Plaintiff has failed to point to a "policy or custom" for purposes of liability of Sheriff Nelson in his official capacity.

To the extent that the Plaintiff makes a separate claim against Cowlitz County, his claim should be dismissed with prejudice. The Plaintiff failed to respond to the Defendants' motion for summary judgment as to this claim, and failed to point to any evidence in support of the claim.

Plaintiff's federal constitutional claims asserted against Sheriff Nelson, in his official capacity, and Cowlitz County should be dismissed with prejudice because Plaintiff failed to point to evidence to support the claims.

**D. FOURTH AMENDMENT CLAIM FOR ARREST WITHOUT PROBABLE CAUSE**

The Plaintiff moves for summary judgment on this claim arguing that Deputy O'Neill is collaterally estopped from litigating whether there was probable cause for his arrest. Dkt. 18. Deputy O'Neill argues that he is not collaterally estopped from arguing the issue and asserts qualified immunity as to this claim. Dkt. 15. This opinion will first turn to whether collateral estoppel applies and then whether Deputy O'Neill is entitled to qualified immunity.

1. <u>Collateral Estoppel</u>

Courts in the Ninth Circuit give a "state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Skoog v. Cty. of Clackamas*, 469 F.3d 1221, 1230 (9th Cir. 2006). Accordingly, to determine whether the Cowlitz County, Washington District Court's holding, that there was not probable cause to support the arrest, applies to Deputy O'Neill in this case, Washington law on collateral estoppel applies. *Id.* In Washington:

> Collateral estoppel requires proof that (1) the issue in the prior and current action is identical, (2) the prior action ended in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior action, and (4) the application of collateral estoppel would not work an injustice.

*Afoa v. Port of Seattle*, 191 Wn.2d 110, 131, 421 P.3d 903, 914 (2018). The party seeking application of the collateral estoppel doctrine has the burden of proof. *Christensen v. Grant County Hospital Dist. 1,* 152 Wash.2d 299, 307 (2004). "All of the elements must be shown;

therefore, if any one element fails the doctrine does not apply." *George v. Farmers Ins. Co. of Washington*, 106 Wn. App. 430, 443 (2001).

The Plaintiff has failed to carry his burden to show that the doctrine of collateral estoppel applies here to his claim that he was arrested without probable cause. The parties do not dispute that the issue in the criminal matter and this case is identical or that the prior action ended in a final judgment on the merits. They do dispute the last two elements: whether Deputy O'Neill "was a party or in privity with a party to the prior action," and whether "application of collateral estoppel would not work an injustice."

It is undisputed that Deputy O'Neill was not a party in the criminal case against the Plaintiff. Under Washington law, "[a] person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party." *Afoa v. Port of Seattle*, 191 Wn.2d 110, 132, 421 P.3d 903, 914 (2018). While the Plaintiff points out that Deputy O'Neill filled out the reports against him and testified at the hearing in the district court, he makes no showing that Deputy O'Neill controlled or substantially participated in the control of "the presentation." "Washington courts have held that serving as a witness does not render a government official in privity with her employer and thus, the official cannot be estopped from relitigating an issue in a subsequent proceeding." *See Wuerfel v. City of Seattle*, 2006 WL 27207, at *4–5 (W.D. Wash. Jan. 5, 2006)(*citing Ward v. Torjussen*, 52 Wash. App. 280, 758 P.2d 1012, 1014-15 (Wash. Ct. App. 1988); and *Everett v. Abbey*, 108 Wash. App. 521, 31 P.3d 721, 727 (Wash. Ct. App. 2001)). There is no showing that Deputy O'Neill directed discovery, made the decisions on which witnesses or evidence to present, made decisions on which theory of the case to pursue, or made, or substantially controlled, any of the strategic decisions in the criminal litigation. He did

1    not have the right to cross examine witnesses or be represented by counsel in the criminal

2    litigation. *Wuerfel,* at 5.  He was not in party or in privity with the state in the criminal case.

3            Moreover, "[c]ollateral estoppel is inapplicable where it would work an injustice on the

4    party being estopped."  *Afoa,* at 132.  The Washington Supreme Court has considered whether

5    "the party against whom the estoppel is asserted [had] interests at stake that would call for a full

6    litigational effort" in deciding whether application of the doctrine would work an injustice.

7    *Hadley v. Maxwell*, 144 Wash.2d 306, 312 (2001).  Deputy O'Neill's interest in the criminal case

8    was not one that would "call for full litigational effort."  His interest here is not only to justify his

9    decision to arrest the Plaintiff, but to "forestall liability from civil suit."  He did not have the

10   same interest in litigating the issue in the criminal case.  The burden of proof is different in the

11   two proceedings.  Furthermore, certain defenses - like the defense of qualified immunity (which

12   Deputy O'Neill is asserting in this civil case) - were unavailable to him in the criminal case.

13   Application of collateral estoppel against Deputy O'Neill would work an injustice here.

14           Collateral estoppel does not preclude Deputy O'Neill from litigating the constitutionality

15   of his decision to place the Plaintiff under arrest because he was not a party or in privity with the

16   state in the criminal proceeding and application of the doctrine would work an injustice on

17   Deputy O'Neill.  *See Deskins v. City of Bremerton*, 2009 WL 1247067, at *14–15 (W.D. Wash.

18   May 4, 2009), *aff'd*, 388 Fed. Appx. 750 (9th Cir. 2010).

19           2.   Deputy O'Neill's Claim for Qualified Immunity

20                 *a. Violation?*

21           The Fourth Amendment to the United States Constitution protects people against

22   "unreasonable searches and seizures."  "The 'reasonableness' and hence constitutionality of a

23   warrantless arrest is determined by the existence of probable cause."  *Barry v. Fowler, 902 F.2d*

24

*770, 772* (9th Cir. 1990). "Probable cause requires only that those facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe that the suspect has committed an offense." *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015)(*cert. denied sub nom. Yousefian v. City of Glendale, Cal.*, 136 S. Ct. 135 (2015))(*internal quotations and citations omitted*). "[A]n officer may not ignore exculpatory evidence that would 'negate a finding of probable cause.'" *Id.* (*quoting Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003)). "Probable cause is an objective standard. The arresting officers' subjective intention . . . is immaterial in judging whether their actions were reasonable for Fourth Amendment purposes." *United States v. Lopez,* 482 F.3d 1067, 1072 (9th Cir. 2007).

The Plaintiff's motion for summary judgment on his Fourth Amendment claim (Dkt. 18) should be denied. The Plaintiff argues that Deputy O'Neill acknowledged that he did not feel he had probable cause to arrest Plaintiff until Plaintiff began to object to participating in the breathalyzer or field sobriety tests and began to object to begin pulled over due to his race. Dkt. 24. The Plaintiff asserts that probable cause is lacking when the arrest is motivated by retaliation against a person verbally challenging police authority or for refusal to consent to a warrantless search. Dkt. 24 (*citing Huston v. Hill,* 482 U.S. 451, 462-63 (1987); *Duran v. City of Douglas,* 904 F.2d 1372 (9th Cir. 1990); and *United States v. Prescott*, 581 F.2d 1343, 1351 (9th Cir. 1978)). Deputy O'Neill states that it was not the Plaintiff's verbal challenges or refusal to consent to the sobriety tests but the Plaintiff's speeding, his inability to tell Deputy O'Neill how fast he was going or the posted speed limit, the Plaintiff's failure to stop for almost a mile, the smell of alcohol on the Plaintiff's breath, the Plaintiff's watery, red eyes, his initial lying and then acknowledgement that he had been drinking, and then, lastly his sudden change in mood and demeanor (becoming verbally aggressive) that caused Deputy O'Neill to finally conclude

that he had reasonable grounds to believe the Plaintiff was driving under the influence. The Plaintiff asserts that videos clearly demonstrate that his demeanor did not change. Dkt. 24. The undersigned's review of the video does not lead to so easy a conclusion. While the Plaintiff's physical demeanor does not change, the video does not have any audio, so it is of little use in analyzing this issue. The Plaintiff asserts that his voice and demeanor did not change; Deputy O'Neill asserts that they did change. There are issues of fact as to whether the Plaintiff's demeanor changed, and there are issues of fact as to whether Deputy O'Neill had probable cause to arrest the Plaintiff for driving under the influence.

### b. Qualified Immunity

"Even if the arrest was made without a warrant and without probable cause, however, the officer may still be immune from suit if it was objectively reasonable for [them] to believe that [they] had probable cause." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1078 (9th Cir. 2011). "The law acknowledges that an otherwise competent officer will sometimes make an unreasonable decision or make an unreasonable mistake as to law or fact. In those instances, the officer will appropriately be liable under § 1983." *Id.* "Framing the reasonableness question somewhat differently, the question in determining whether qualified immunity applies is whether all reasonable officers would agree that there was no probable cause in this instance." *Id.*

Defendant O'Neill's motion for summary judgment on the claim for qualified immunity as to Plaintiff's Fourth Amendment claim for lack of probable cause to arrest (Dkt. 15) should be denied. There are issues of fact as to the events of that early morning. For example, there are issues of fact as to whether the Plaintiff's demeanor changed and how long Deputy O'Neill attempted to get the Plaintiff to stop before he did stop – Deputy O'Neill says it was almost a mile, the Plaintiff says it was only a few blocks. Each of these were factors in Deputy O'Neill's

decision to arrest the Plaintiff for driving under the influence of intoxicating liquor. There are questions of whether the arrest lacked probable cause. Accordingly, the motion for qualified immunity should be denied.

### E. CLAIM FOR VIOLATION OF FOURTEENTH AMENDMENT BASED ON ARREST DUE TO RACE

The Defendants move for dismissal of this claim, arguing that there is no evidence that Deputy O'Neill's decision to stop the Plaintiff for speeding or his decision to arrest the Plaintiff was based on the Plaintiff's race. Dkt. 15.

The Defendants' motion to dismiss this claim should be granted. The Plaintiff did not respond to the motion for summary judgment to dismiss this claim. Plaintiff's subjective belief that Deputy O'Neill was motivated by discriminatory animus, without more, is insufficient. *See Gomez v. City of Fremont,* 730 F. Supp.2d 1056 (N.D. Cal. 2010). The Plaintiff fails to point to facts in dispute. The Defendants are entitled to a judgment as a matter of law and this claim is dismissed with prejudice.

### F. CLAIM FOR VIOLATION OF FIRST AMENDMENT BASED ON ARREST IN RETALIATION FOR PROTECTED SPEECH

"[T]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013). In the Ninth Circuit:

> To demonstrate retaliation in violation of the First Amendment, [Plaintiff] must ultimately prove first that [Defendants] took action that would chill or silence a person of ordinary firmness from future First Amendment activities. . . The second requirement is [that] ... [Plaintiff] must ultimately prove that [Defendants'] desire to cause the chilling effect was a but-for cause of [Defendants'] action.

*Skoog v. County of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir.2006) (*internal quotation marks and footnote omitted*). "[A] right exists to be free of police action for which retaliation is a but-

for cause even if probable cause exists for that action." *Id.*, at 1235. "[T]he viability of the Fourth Amendment claim render[s] the First Amendment claim redundant." *Id.* at 1234 (*internal quotation marks and citation omitted*).

The Defendants move for summary dismissal of this claim, arguing that the Plaintiff cannot point to any evidence that "the but-for cause of the Plaintiff's arrest was a desire to chill his First Amendment activities, if any" and that Deputy O'Neill is entitled to qualified immunity. Dkt. 15. The Plaintiff argues that Deputy O'Neill acknowledged that he did not believe he had probable cause to arrest the Plaintiff until after the Plaintiff declined to take the breath test. Dkt. 24. The Plaintiff asserts that there was no probable cause for arrest, so "the only remaining motives for the arrest are retaliation and racial bias (which are both improper), which are therefore necessarily the but-for causes of the arrest." *Id.* These are the same grounds on which the Plaintiff bases his Fourth Amendment claim.

The Defendants' motion for summary judgment dismissal of this claim should be denied. For the same reasons there are issues of fact as to the Plaintiff's Fourth Amendment claim and Deputy O'Neill's claim for qualified immunity, there are issues of fact as to the First Amendment claim and Deputy O'Neill's claim for qualified immunity as to this claim. As stated above, while Plaintiff maintains that it was his challenge to Deputy O'Neill's authority, refusal to take the breath test and other sobriety tests, and his accusations of improper racial motivation that was the cause of his arrest, Deputy O'Neill points to all the events leading up to and including the Plaintiff's change in demeanor in combination that lead to the arrest.

If the Plaintiff's Fourth Amendment claim is viable (there was no probable cause for the arrest), this First Amendment claim is redundant. If the Fourth Amendment claim is not viable (there was probable cause for the arrest), this First Amendment claim should not be dismissed

because, in the Ninth Circuit, a First Amendment retaliation claim does not require a lack of probable cause to proceed.  *Skoog,* at 1235.

### G.  CLAIM FOR VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS - EXCESSIVE FORCE

The Fourth Amendment to the United States Constitution protects people against "unreasonable searches and seizures."  "Under the Fourth Amendment, law enforcement may use "objectively reasonable" force to carry out such seizures; as in the unlawful arrest analysis, this objective reasonableness is determined by an assessment of the totality of the circumstances."  *Green v. City & Cty. of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014).  "[D]etermining whether the use of force to effect a seizure was unreasonable under the Fourth Amendment—and therefore unlawful—requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946–47 (9th Cir. 2017)(*internal citations omitted*).  In evaluating the reasonableness of Deputy O'Neill's action, the governmental interests at stake to be considered are:  "(1) how severe the crime at issue was, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight."  *Mattos v. Agarano*, 661 F.3d 433, 443 (9th Cir. 2011).

The Defendants move for summary judgment dismissal of the Plaintiff's excessive force claim, arguing that the force used was objectively reasonable.  Dkt. 15.  They point to the Plaintiff's testimony that other than Deputy O'Neill rushing the Plaintiff to the police car and maybe bumping his leg as he swung it into the police car, no other force was used on him, and the Plaintiff acknowledged that he suffered no injuries that night.  *Id.*

The Plaintiff opposes the dismissal of this claim, arguing that any amount of force used on him was unreasonable because Deputy O'Neill lacked probable cause to arrest him. Dkt. 24.

The Defendants' motion for summary judgment dismissal of this claim should be granted; the amount of force used was reasonable. While the intrusion on the Plaintiff was not insubstantial, the governmental interests at stake were greater. The crime that the Plaintiff was arrested for was significant – driving under the influence. If permitted to continue to drive, he posed a threat to himself, other passengers, and other people on the road. While he was not actively resisting or evading, the amount of force used was minimal. The Plaintiff's contention that the lack of probable cause means that any force used was unreasonable does not provide a valid ground for an excessive force claim. "Just proving lack of probable cause for the arrest, for instance, does not establish that the police used excessive force, or, indeed, any force." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024 (9th Cir. 2015)(*citing Mattos*, 443 n. 4 (rejecting plaintiff's argument that any amount of force used against her was excessive if there was a lack of probable cause, because the absence of probable cause alone is insufficient to establish excessive force)). "Force used by an officer to effectuate an arrest, regardless of whether the officer had probable cause to make the arrest, may still be reasonable." *Id.* (*internal citations omitted*). The Plaintiff points to no issues of fact to demonstrate that Deputy O'Neill used excessive force. This claim should be dismissed with prejudice.

### H. CLAIM FOR VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS - "UNLAWFUL SEARCH AND SEIZURE OF VEHICLE"

The Defendants move for summary judgment dismissal of this claim, arguing that Deputy O'Neill did not search or impound the Plaintiff's vehicle. Dkt. 15. The record indicates that Deputy Johnson, who is not named as a defendant in this case, is the officer who searched and impounded the car. Dkt. 25-2, at 28-29. The Defendants' motion for summary judgment as to

this claim should be granted. The Plaintiff failed to respond to the motion and failed to point to any evidence that would support this claim against any of the defendants. The claim should be dismissed with prejudice.

### I. CLAIM FOR VIOLATION OF FOURTEENTH AMENDMENT BASED ON WRONGFUL PROSECUTION, FAILURE TO COLLECT, PRESERVE AND DISCLOSE EXCULPATORY EVIDENCE, AND MALICIOUS ABUSE OF PROCESS

The Plaintiff asserts in this Complaint that his Fourteenth Amendment rights were violated based on his wrongful prosecution, failure to collect, preserve and disclose exculpatory evidence and malicious abuse of process. Dkt. 1. The Defendants move for summary judgment on each of these grounds. Dkt. 15. Each will be considered, in turn.

#### 1. Wrongful Prosecution

Under the Fourteenth Amendment, a person has a "right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey,* 263 F.3d 1070, 1074-75 (9th Cir. 2001). The Plaintiff must show either: "(1) Defendants continued their investigation of [the Plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Id.,* at 1076.

The Defendants' motion to dismiss this claim should be granted. The Plaintiff failed to respond to the motion regarding this claim. He failed to point to any issues of fact as to the claim and the Defendants are entitled to a judgment as a matter of law on it. The Plaintiff's Fourteenth Amendment claim for wrongful prosecution should be dismissed with prejudice.

#### 2. Failure to Collect, Preserve and Disclose Exculpatory Evidence

A police officer failure to collect or preserve potentially exculpatory evidence does not violate the due process clause unless the officer acted in bad faith. *Miller v. Vasquez*, 868 F.2d 1116, 1120 (9th Cir. 1989); *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)(holding that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.")

The Defendants move for summary judgment on the Plaintiff's claim that Deputy O'Neill failed to collect, preserve, or disclose exculpatory evidence, asserting that the Plaintiff cannot show that Deputy O'Neill acted in bad faith. Dkt. 15. The Plaintiff opposes dismissal of the claim, and argues without citation to any authority or the record, that Deputy O'Neill's failure to use his dashboard camera and record the stop and arrest that night violated his due process rights. Dkt. 24. The Plaintiff argues that Deputy O'Neill did not provide any evidence that his camera wasn't working, and that it is just as likely that he didn't turn the camera on so he could effectuate an illegal arrest. *Id.*

The Defendants' motion to dismiss this claim should be granted. The Plaintiff has failed to point to any evidence that Deputy O'Neill acted in bad faith when he failed to record the event. The Plaintiff's attempt to shift the burden of proof to Deputy O'Neill is unavailing. He points to no evidence that Deputy O'Neill failed to preserve or disclose potentially exculpatory evidence that was collected. The Plaintiff has failed to carry his burden on this claim and the Defendants are entitled to summary judgment dismissal of the claim as a matter of law.

3. Malicious Abuse of Process

"In this circuit, the general rule is that a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy." *Usher v. City of Los Angeles*, 828 F.2d 556, 561–62 (9th Cir. 1987). "[A]n exception

exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights." *Id.* The Ninth Circuit applies the state's law on malicious prosecution. *Id.* In Washington, a plaintiff making a claim for malicious prosecution must show that: (1) the prosecution claimed to have been malicious was instituted by defendant; (2) "that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff," and (5) that the plaintiff was damaged. *Hanson v. City of Snohomish*, 121 Wn.2d 552, 558 (1993). "Although all elements must be proved, malice and want of probable cause constitute the gist of a malicious prosecution action." *Id.*

The Defendants move for dismissal of the Plaintiff's claim for malicious prosecution arguing that there is no evidence of malice. Dkt. 15. The Plaintiff's response, after citing the law, is Plaintiff's "common law claim is cognizable in the '1983' action." Dkt. 24.

The Defendants' motion for summary judgment on this claim should be granted and the claim dismissed. The Plaintiff failed to point to any evidence of malice on the part of Deputy O'Neill, there is no evidence of an ulterior motive or that the criminal proceedings were in some manner manipulated by Deputy O'Neill. The Defendants are entitled to a judgment as a matter of law and the claim should be dismissed with prejudice.

## J. STATE LAW CLAIM FOR NEGLIGENCE

In Washington, the elements of negligence are duty, breach, causation, and damages. *Keller v. City of Spokane,* 146 Wn.2d 237, 343 (2002).

The Defendants move for summary dismissal of the Plaintiff's claim for negligence, arguing that the claim is barred by the public duty doctrine. Dkt. 15. The Plaintiff does not oppose the

dismissal of this claim.  Dkt. 24.  The Plaintiff points to no evidence in support of his negligence claim.  The Defendants are entitled to a judgment as a matter of law on the claim and it should be dismissed with prejudice.

## K.  STATE LAW CLAIM FOR OUTRAGE

In Washington, "[t]he tort of outrage requires the proof of three elements:  (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress."  *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003).  Any claim for outrage "must be predicated on behavior so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.,* at 196 (*internal quotations and citation omitted*).  "The question of whether certain conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability."  *Dicomes v. State*, 113 Wash.2d 612, 630 (1989).

The Defendants move for summary dismissal of Plaintiff's claim for outrage arguing that stopping a speeding vehicle and arresting a person who smelled of alcohol and exhibited others signs of intoxication without any use of force" is not "extreme and outrageous conduct."  Dkt. 15.  The Plaintiff opposes dismissal of the claim and asserts that arresting someone based on their race or for the exercise of their rights is extremely outrageous.  Dkt. 24.

The Defendants' motion for summary judgment dismissal of Plaintiff's claim for outrage should be granted and the claim dismissed.  The Plaintiff fails to point to any specific evidence that Deputy O'Neill stopped, investigated or arrested the Plaintiff based on his race.  The Plaintiff fails to show that there are issues of fact on whether Deputy O'Neill's decisions to stop,

investigate or arrest the Plaintiff "for the exercise of his rights" were sufficiently outrageous to defeat summary judgment dismissal of this claim. Even taking the facts in a light most favorable to the Plaintiff, reasonable minds could not "differ on whether the conduct was sufficiently extreme to result in liability." *See Dicomes,* at 630. The Plaintiff's claim for outrage should be dismissed with prejudice.

## L.  STATE LAW CLAIM FOR FALSE ARREST AND FALSE IMPRISONMENT

Under Washington law, "[a] false arrest occurs when a person with actual or pretended legal authority to arrest unlawfully restrains or imprisons another person." *Youker v. Douglas County,* 162 Wash. App. 448, 465 (2011). "The gist of false arrest and false imprisonment is essentially the same." *Id.* "[T]he unlawful violation of a person's right of personal liberty, and a false imprisonment occurs whenever a false arrest occurs." *Id.* Probable cause is a complete defense to claims of false arrest and false imprisonment. *Hanson v. Snohomish,* 121 Wn.2d 552, 563 (1993). Moreover, Washington officers "enjoy a qualified immunity against liability for false arrest and imprisonment." *Youker,* at 465. As is the case here, "[f]or an arrest accomplished without a warrant, the immunity is limited to situations where the officer reasonably believed the arrested party committed a felony or to misdemeanor arrests where the arresting officer had reasonable cause to believe the crime was being committed in his presence and he acted in good faith on that belief." *Id.*

The Defendants move for summary judgment on the Plaintiff's false arrest and false imprisonment claims arguing that Deputy O'Neill had probable cause to arrest the Plaintiff for driving under the influence of intoxicating liquor. Dkt. 15. The Plaintiff opposes the motion by asserting that there was no probable cause. Dkt. 24.

1    The Defendants' motion for summary judgment on these claims should be denied.  There

2    are issues of fact as to whether Deputy O'Neill had probable cause to arrest the Plaintiff.  As was

3    the case for the Plaintiff's Fourth Amendment claim, these issues of fact preclude a decision on

4    claims for qualified immunity.

5    **M. CONCLUSION**

6    The Defendants' motion for summary judgment (Dkt. 15) is denied as to the Plaintiff's

7    Fourth Amendment claim for arrest without probable cause and his First Amendment claim for

8    arrest in retaliation for protected speech.  There are issues of fact as to these claims which

9    preclude summary dismissal of them or a grant of qualified immunity for Deputy O'Neill at this

10   time.  The Plaintiff's motion for summary judgment on his Fourth Amendment claim for arrest

11   without probable cause (Dkt. 18) is denied.  The Defendants' motion for summary judgment

12   (Dkt. 15) on all other of the Plaintiff's federal claims is granted and they are dismissed with

13   prejudice.  The Defendants' motion for summary judgment on Plaintiff's state law claims (Dkt.

14   15) is granted as to the negligence and outrage claims; those claims are dismissed with prejudice.

15   The Defendants' motion for summary judgment (Dkt. 15) on the Plaintiff's claims for false arrest

16   and false imprisonment is denied.

17   Accordingly, the Plaintiff's federal claims that remain for trial are the Fourth Amendment

18   claim for arrest without probable cause and his First Amendment claim for arrest in retaliation

19   for protected speech.  The Plaintiff's state law claims that remain for trial are for false arrest and

20   false imprisonment.

21                              **III.    ORDER**

22   Therefore, IT IS SO ORDERED.

23

24

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 4th day of January, 2019.

ROBERT J. BRYAN
United States District Judge